This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Donald Shirley ("Appellant"), appeals the decision of the Summit County Court of Common Pleas convicting him of aggravated burglary, assault, and domestic violence. We affirm.
 I.
Appellant and Kimberly White ("White") met while White was living in South Carolina sometime in 1999. The two began dating, and two weeks later Appellant helped White move to Akron, Ohio, the area where she previously resided. Appellant then returned to his home in California. One week later, Appellant moved to Akron, and the couple began living together.
The couple lived together at various addresses until early October 2000, when White moved out of the couple's apartment. On December 10, 2000, Appellant went to White's apartment, attacked her and her new boyfriend, Richard Roop ("Roop"), and destroyed some of her belongings. Appellant was arrested and charged with one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), one count of assault, in violation of R.C. 2903.13(A), and one count of domestic violence, in violation of R.C. 2919.25(A). The court issued temporary protection orders for White and Roop, ordering Appellant to refrain from causing, attempting or threatening to cause physical harm to either White or Roop, going to or entering their residences, schools, businesses, or places of employment, and having any contact in person or by phone with either White or Roop.
Four days later, Appellant was arrested after a traffic incident involving his vehicle and the vehicle in which White and Roop were driving. Appellant was charged with violating a protection order, in violation of R.C. 2919.27, and intimidation of a crime victim or witness, in violation of R.C. 2921.04(B). Appellant entered a plea of not guilty to all charges.
Appellant waived his right to a trial by jury, and the matter proceeded to a bench trial on March 9, 2001, continuing on March 13, 2001. The court found Appellant guilty on the charges of aggravated burglary, assault, and domestic violence. Appellant was acquitted on the charges of violation of a temporary protection order and intimidation of a crime victim or witness. On April 24, 2001, the court sentenced Appellant to six years imprisonment for aggravated burglary and six months each for assault and domestic violence. The court ordered Appellant to serve the three sentences concurrently.
Appellant timely appealed, raising three assignments of error.
 II. First Assignment of Error THE TRIAL COURT'S VERDICT OF GUILTY OF AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FURTHER, THE CONVICTION OF THE DEFENDANT FOR THE CHARGE OF AGGRAVATED BURGLARY WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND SHOULD BE REVERSED.
In his first assignment of error, Appellant argues that his conviction of aggravated burglary was against the manifest weight of the evidence and was not supported by sufficient evidence.
As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
In order for a defendant to preserve the right to appeal the sufficiency of evidence upon which his conviction is based, he must timely file a Crim.R. 29 motion for acquittal with the trial court. Statev. Liggins (Aug. 18, 1999), Summit App. No. 19362, unreported, at 3. See, also, State v. Roe (1989), 41 Ohio St.3d 18, 25. Therefore, if a defendant fails to make a Crim.R. 29 motion, he waives any challenge to the sufficiency of evidence on appeal. Id.
After a careful review of the record, we find that Appellant did not make a motion for acquittal at the trial court level.[1] As such, Appellant waived any objection under Crim.R. 29 to the sufficiency of the evidence, and we will not consider this assignment of error.
Appellant also argues that his conviction for aggravated burglary was against the manifest weight of the evidence. We disagree.
A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 7. When a defendant asserts that the conviction is against the manifest weight of the evidence,
 [a]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
Appellant challenges only his conviction of aggravated burglary. R.C.2911.11(A)(1) provides:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
Force, as used in the aggravated burglary statute, is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Even the opening of an unlocked door constitutes force sufficient to satisfy the statute. Statev. Lane (1976), 50 Ohio App.2d 41, 46; State v. Miller (Apr. 9, 1997), Medina App. No. 2584-M, unreported, at 8.
In this case, White testified that on the afternoon of December 10, 2000, she and Roop were asleep in her bedroom when she was awakened by a pounding at the door. She yelled to her friend, Eddie Berus ("Berus"), who was in the living room, to answer the door. Berus testified that Appellant was the one knocking at the door. Berus stated that Appellant asked if White was there, to which Berus responded, "yes, she [is]. I'll go get her." On cross-examination, Berus testified he told Appellant to "wait here. I'll go get her." Berus stated he opened only the inner door to the home and not the outer screen door. He stated that at no time did he indicate to Appellant that he could enter the house. Instead, Berus testified that after he told Appellant that Berus would go find White, he turned his back to the door. Appellant then came through the door and ran past Berus, looking for White.
White explained that after she heard the knocking, she got out of bed and opened her bedroom door, when she saw Appellant standing "right in front of [her] face." On cross-examination, White stated when she opened her bedroom door, Appellant was standing in her living room, and Appellant was "right here." She admitted she did not know if Berus let Appellant into the home. However, she did state that at no time did Appellant have permission to be in her residence. White also stated she purposely never told Appellant where she was living and that this was the first time she had seen him at her house.
When asked when it was that she started dating Roop, White stated they did not become romantically involved until sometime around the first of the year. She described their relationship on the night in question by stating, "[w]e were just friends when we were going out the night of this incident." However, on cross-examination, Roop stated he and White had sex either the night of December 9 or the morning of December 10. White also testified she was fully dressed during the altercation, wearing shorts and a shirt. Berus testified that he recalled White wearing sleeping clothes consisting of a tee shirt and underwear.
White and Berus each testified that Appellant struck White, resulting in a swollen eye and bruises to White. White, Berus, and Roop testified to the damage and destruction Appellant caused to various household items.
Although some of the testimony was in conflict, we decline to overturn the verdict because the trier of fact believed the prosecution witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." Statev. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Matters of credibility are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in convicting Appellant of aggravated burglary.
This is not a case where the evidence weighs heavily in favor of Appellant, meriting a reversal of the conviction and a new trial. Therefore, we conclude that Appellant's conviction for aggravated burglary was not against the manifest weight of the evidence when the trial court concluded that Appellant by force, stealth, or deception, trespassed in White's occupied residence and inflicted physical harm.
Appellant's first assignment of error is without merit and is overruled.
 III. Second Assignment of Error THE TRIAL COURT'S SENTENCE OF SIX YEARS FOR THE OFFENSE OF AGGRAVATED BURGLARY IN THIS MATTER IS CONTRARY TO LAW.
In his second assignment of error, Appellant asserts that the trial court erred when it sentenced him to six years imprisonment for his conviction of aggravated burglary, a felony of the first degree. We disagree.
An appellate court may remand a matter on appeal for resentencing if it finds that the trial court clearly and convincingly acted contrary to law. R.C. 2953.08(G). Clear and convincing evidence is evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477.
We begin by noting the possible sentences for a first-degree felony. Pursuant to R.C. 2929.14(A)(1), the trial court may impose a sentence of three, four, five, six, seven, eight, nine, or ten years. R.C. 2929.19
requires the trial court to hold a hearing before sentencing a defendant. "At the hearing, the offender, the prosecuting attorney, the victim * * * and, with the approval of the court, any other person maypresent information relevant to the imposition of sentence in the case." (Emphasis added.) R.C. 2929.19(A)(1). The court shall consider this information, as well as the record, any presentence investigation report, and victim impact statement before imposing its sentence. R.C.2929.19(B)(1).
The trial court must also consider applicable seriousness and recidivism factors pursuant to R.C. 2929.12 in exercising discretion in its determination of "the most effective way to comply with the purposes and principles of sentencing[.]" R.C. 2929.12(A). Furthermore, the court may consider "any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A). However, a sentence may not be based upon the offender's race, gender, ethnicity, or religion. R.C. 2929.11(C).
Appellant argues that the trial court considered impermissible factors in pronouncing its sentence, in particular, the number of attorneys who had represented Appellant and a report on an incident that occurred in the courtroom after the trial court rendered its verdict. The court heard statements from Appellant, his counsel, the prosecutor, and the victim. The court also obtained a presentence investigation report, as well as a report from a deputy who witnessed the apparent altercation in the courtroom between Appellant and White. Neither of these reports appears in the record.
There is nothing in the record to support Appellant's contention that the trial court considered the number of attorneys who represented Appellant during this trial. The trial court merely stated the fact that Appellant had "been through a number of attorneys." There is no indication that the trial court considered this fact in the determination of the sentence. However, even if the trial court did consider the number of attorneys used by Appellant's, that consideration was proper.
The trial court's entire statement to Appellant was, "[y]ou've been through a number of attorneys and you've been in front of me, and each time you've made this matter more and more difficult for all involved, including yourself." A sentencing court may properly consider a defendant's conduct throughout the course of a trial. See State v.O'Dell (1989), 45 Ohio St.3d 140, 147. Appellant's behavior throughout the course of his trial was relevant to the sentencing in that it is probative of his prospects for rehabilitation. See id. "The applicable statutes do not preclude the sentencing court from considering serious misbehavior by a defendant as observed by the sentencing court during trial." Id. Thus, the trial court was permitted to consider Appellant's behavior during the trial, including the changing of attorneys of record.
Appellant also argues that the trial court impermissibly considered an altercation between Appellant and White, which happened in the courtroom, after the trial court rendered its verdict. Both the prosecutor and the victim alluded to this incident, and the trial court stated,
 I'm aware there's two sides to every story, but the last thing that you needed to do, sir, is in some way, shape, or form is make a threat to the victim in my courtroom before or at the time I rendered a verdict. Don't shake your head and tell me you didn't do it because I got a deputy who saw you do it and wrote a report. So, without that, this would have been an entirely different matter. So the consequences of your conduct is upon your own head in this particular matter.
Prior to the sentencing hearing, the trial judge allowed both sides to view the report at sidebar. No objections were noted; nor were any statements made in response to the particular report.
As previously noted, during the sentencing hearing, "any other personmay present information relevant to the imposition of sentence in thecase." (Emphasis added.) R.C. 2929.19(A)(1). The deputy who saw the altercation between Appellant and White presented information in the form of a report, with the court's approval, as provided by statute. Both attorneys were presented with an opportunity to review the report. The trial court did not err in considering this report or Appellant's conduct.
During the sentencing hearing, the trial court stated,
 I would note for the record the offender in this matter has previously served a prison term, in committing the offense the offender did cause physical harm to a person, there was physical or mental injury suffered by the victim in this particular matter, the offender's relationship with the victim facilitated the offense, the offender does have a history of criminal convictions. The record would seem to indicate he has not been rehabilitated to a satisfactory degree after having been so adjudicated.
Thus, the trial court considered the relevant factors pursuant to R.C.2929.12 in determining the appropriate sentence. Evidence was presented throughout the trial on each of these factors.
Therefore, we cannot say the trial court clearly and convincingly acted contrary law when it sentenced Appellant to six years imprisonment on the charge of aggravated burglary. Accordingly, Appellant's second assignment of error is overruled.
 IV. Third Assignment of Error THE REPRESENTATION OF THE DEFENDANT BY TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF DEFENDANT'S RIGHTS AS GUARANTEED TO HIM BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
In his final assignment of error, Appellant argues that he was denied effective assistance of counsel as guaranteed by both the United States Constitution and the Ohio Constitution. We disagree.
The Sixth Amendment guarantees each defendant the right to effective assistance of counsel. Courts use a two step process in determining whether a defendant's right to effective assistance of counsel has been violated.
 First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In order to demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691, 80 L.Ed.2d at 695.
The court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. First, the defendant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Then, the court must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id. There is a strong presumption that counsel's performance was adequate. State v.Smith (1985), 17 Ohio St.3d 98, 100.
An appellate court may analyze the prejudice prong of the Strickland
test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. State v. Loza (1994), 71 Ohio St.3d 61, 83. Accordingly, we will begin our analysis with a discussion of the prejudice prong of Strickland.
Throughout the course of the trial, Appellant was represented by four different attorneys. The record does not reflect the reasons for the withdrawal and subsequent replacement of any of the attorneys, although the trial court acknowledged that "some reasons [were] of [Appellant's] own making and [some] not of [Appellant's] own making." Appellant first argues that his trial counsel was deficient because he failed to locate alleged evidence from prior counsel. Appellant asserts that he was prejudiced by counsel's failure to retrieve this evidence, which Appellant stated was a computer disk, and also by counsel's failure to request a continuance in order to find and properly consider the alleged evidence.
We note that nowhere in the record is there a showing that the evidence located on the computer disk, if such disk even existed, would have affected the judgment of the trial court. Appellant cannot demonstrate that there was a reasonable probability that, were it not for counsel's errors in his failure to recover the alleged evidence or to request a continuance to find such evidence, the result of the trial would have been different. See Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
Appellant further asserts that he was prejudiced by counsel's failure to request a Crim.R. 29 motion. In our discussion of Appellant's first assignment of error, we held that his conviction for aggravated burglary was supported by the weight of the evidence. Although we found that Appellant waived his challenge to the sufficiency of the evidence, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Therefore, Appellant cannot demonstrate any prejudice due to the failure of his counsel to move the court for a Crim.R. 29 acquittal.
Appellant also argues he was prejudiced because his counsel agreed to a continuance of the trial to a call day, when he would only be afforded an hour in which to present his defense. Appellant also cites reasons relating to his counsel's failure to call any witnesses, introduce any exhibits, or to seek a further continuance. Finally, Appellant argues that his trial counsel was ineffective because he failed to object to the report of the incident occurring between him and White after the trial court rendered the verdict. He also argues he was prejudiced because counsel failed to contradict or offer explanation for the incident and failed to make a record of this event.
Upon reviewing Appellant's trial counsel's conduct, there is a strong presumption that these actions were part of a valid trial strategy.Strickland, 466 U.S. at 689, 80 L.Ed.2d at 694. Counsel can provide effective assistance using numerous tactics in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel. State v. Gales (Nov. 22, 2000), Lorain App. No. 00CA007541, unreported, at 17; State v. Clayton (1980), 62 Ohio St.2d 45, 49. Absent the required showing of prejudice, the conduct of trial counsel complained of here will not be deemed erroneous. State v. Coulter
(1992), 75 Ohio App.3d 219, 230. Appellant cannot show that he was prejudiced by the conduct of his trial counsel. Therefore, these actions do not constitute ineffective assistance of counsel.
Appellant's third assignment of error is therefore without merit and is overruled.
 V.
Having overruled Appellant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, J., CARR, J. CONCUR.
[1] Appellant concedes the failure of counsel to move the trial court for acquittal in his third assignment of error.